| | |
|---|---|
| **KLESTADT WINTERS JURELLER** | **Hearing Date: September 7, 2016** |
|   **SOUTHARD & STEVENS, LLP** | **Hearing Time: 3:30 p.m. (EST)** |
| 200 West 41st Street, 17th Floor | |
| New York, NY 10036 | **Objection Deadline: August 31, 2016** |
| Telephone: (212) 972-3000 | |
| Facsimile: (212) 972-2245 | |
| Fred Stevens | |
| Christopher J. Reilly | |

*Special Counsel to Defendant, Counterclaimant,*
  *Cross-Claim Plaintiff and Third-Party Plaintiff*
  *Richard E. O'Connell, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                        :
                                                             :      Chapter 7
HERMAN SEGAL,                                 :
                                                             :      Case No. 13-45519 (NHL)
                   Debtor.            :
-------------------------------------------------------------x
LARRY GRUNFELD,                        :
                                                             :
                   Plaintiff,    :
                                                              :
          -against-                      :      Adv. Pro. No. 14-01224
                                                               :
RICHARD E. O'CONNELL, as Chapter 7 Trustee  :
of the Estate of Herman Segal, HERMAN SEGAL,  :
THE ESQUIRE HOUSE OF M.B., INC.,            :
YOCHEVED SEGAL, a/k/a YOCHEVED SIMON,  :
and ROBERT STEINHERZ,                       :
                                                                :
                   Defendants.  :
-------------------------------------------------------------x

**TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING A STIPULATION OF SETTLEMENT BETWEEN THE TRUSTEE, LARRY GRUNFELD, THE ESQUIRE HOUSE OF M.B., INC, AND YOCHEVED SEGAL, REGARDING, AMONG OTHER THINGS, THE SALE OF A CERTAIN MIAMI <u>COOPERATIVE APARTMENT</u>**

**TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:**

Richard E. O'Connell, as Chapter 7 Trustee (the "Trustee") for the estate of Herman Segal (the "Debtor"), by his attorneys, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion (the "Motion") for an order, pursuant to Fed. R. Bankr. P. 9019, approving a certain stipulation (the "Stipulation") by and between the Trustee, Larry Grunfeld ("Grunfeld"), The Esquire House of M.B., Inc. ("Esquire House"), and Yocheved Segal ("Yocheved", collectively together with the Trustee, Grunfeld and Esquire House, the "Parties"), respectfully sets forth as follows:

## PRELIMINARY STATEMENT

On February 5, 2014, the Bankruptcy Court entered an order (the "Sale Order") authorizing the Trustee to sell the Debtor's right, title and interest in the shares and related lease for a cooperative apartment known as Unit 15, 4720 Pinetree Drive, Miami Beach, Florida 33140 (the "Coop"). On December 3, 2014, Grunfeld commenced adversary proceeding no. 11-1224 (NHL) (the "Coop Proceeding") against the Trustee, the Esquire House, Yocheved, the Debtor and Robert Steinherz ("Steinherz"), asserting, among other things, an ownership interest in the Coop based upon the alleged theft of the Coop by the Debtor through forged signatures and false notary acknowledgments by Yocheved and Steinherz. The Parties in their replies to the Coop Proceeding asserted numerous counterclaims and cross-claims against each other. A comprehensive summary of the claims asserted in the Coop Proceeding is annexed to the Stipulation. Additionally, on January 29, 2015, Grunfeld filed a motion for vacatur of, and relief from, the Sale Order (the "Vacatur Motion"). The Vacatur Motion has been carried on the Court's docket pending resolution of the Coop Proceeding.

On September 9, 2015, the Trustee filed a separate complaint (the "Trustee Complaint") commencing an adversary proceeding against Grunfeld seeking the recovery of $160,744.66 in

transfers made to him by the Debtor (the "Transfers").  Finally, on December 16, 2015, Grunfeld filed Proof of Claim No. 10 against the Debtor's estate seeking allowance of a general, unsecured claim in the amount of $370,150.00 for money allegedly loaned to the Debtor (the "Claim").

The Parties have reached the agreement embodied in the Stipulation which will resolve any and all potential claims between Grunfeld, the Esquire House and the Trustee, and certain claims between the Trustee, Grunfeld and Yocheved, subject to Bankruptcy Court approval. Most significantly, the settlement provides for the immediate liquidation of the Coop, which is a wasting asset that needs to be liquidated.  For the reasons set forth in detail below, the Trustee believes that the compromise embodied in the Stipulation is fair, reasonable and in the best interests of the Debtor's estate and its creditors.  Accordingly, the Trustee respectfully requests this Court's approval of the Stipulation.

## JURISDICTION AND VENUE

1.This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

2.Venue of the case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.The statutory predicate for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## INTRODUCTION

4.On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

5.      On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate. On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BACKGROUND

6.      On or around January 4, 2001, Grunfeld, using the name "Lawrence Grunfeld" instead of "Larry Grunfeld" obtained title to the Coop.

7.      Grunfeld was represented in his purchase of the Co-op by Robert Teitelbaum, Esq. ("Teitelbaum"), an attorney practicing in Brooklyn, New York.

8.      According to Grunfeld "[i]n or about 2002, [Grunfeld] permitted the Debtor to utilize the Co-op provided that the Debtor paid the maintenance and taxes associated with the Co-op."

9.      In or around March 31, 2005, the Esquire House issued replacement certificates for the Coop to "Larry Grunfeld."

10.     On or around May 15, 2008, Grunfeld purportedly executed an affidavit requesting the reissuance of shares in the Coop.

11.     On or around August 8, 2008, the Esquire House re-issued the shares in the Coop to the Debtor. The certificate was executed by Grant N. Epstein and Amanda R. Roziar as the President and Secretary of the Esquire House, respectively (the "Debtor Coop Certificate").

12.     The Debtor Coop Certificate was properly and promptly recorded with the Dade County Clerk on August 26, 2008 under CFN 2008R0693250, Book 26538, Pgs. 0013-14. The

Debtor Coop Certificate has been freely and publicly available on the Dade County Clerk's website since at or around the date of its recording.

13. The Trustee relied on this certificate as evidence of the Debtor's ownership of the Coop.

14. On or around July 20, 2013, the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, issued a Final Judgment of Foreclosure granting Esquire House a judgment of foreclosure and monetary judgment of $20,815.23 (the "Foreclosure Judgment").

15. The Foreclosure Judgment has never been challenged or appealed from by any party, including Grunfeld.

16. On the eve of the scheduled foreclosure sale of the Coop, on September 10, 2013, the Debtor filed the instant bankruptcy petition staying the sale.

17. Had the Debtor not filed for bankruptcy protection, the Coop would have been sold at foreclosure to Francisco Luro ("Luro").

18. Grunfeld claims to know nothing about the alleged fraudulent transfer of his Coop, the failure to pay cooperative fees to the Esquire House for a period of at least five years, the entry of the Foreclosure Judgment, or the Debtor's bankruptcy filing until in or around October 2014.

19. On October 22, 2013, the Trustee entered into an agreement with Luro and the Esquire House pursuant to which the Trustee would sell the Coop to Luro for $90,200 and, among other things, created a mechanism for fixing the Esquire House's claim (the "Sale Agreement") [Docket No. 34-2].

20. On October 24, 2013, the Trustee filed a motion for authority to sell the Coop free and clear of liens, claims and encumbrances pursuant to the Sale Agreement (the "Sale Motion") [Docket No. 20].

21. On November 19, 2013, the Debtor filed an objection to the Sale Motion where he stated under penalty of perjury that he filed for bankruptcy protection "to save for the debtor and creditors the equity that he has in the [Coop]" [Docket No. 29].

22. On December 23, 2013, the Debtor filed his bankruptcy schedules wherein he claimed under penalty of perjury that he owned the Coop.

23. On February 5, 2014, the Court entered an order authorizing, but not requiring, the Trustee to sell the Coop to Luro pursuant to the Sale Agreement (the "Sale Order") [Docket No. 55].

24. Since the entry of the Sale Order, the Trustee, Luro and the Esquire House took significant steps towards completing the sale of the Coop. Among other things, the Trustee made a final delivery of the assignment of proprietary lease rights on September 19, 2014.

25. Darylann Demino or such other party as the Debtor may have designated is currently occupying the Coop and has been since at least September 2014 in an effort to obstruct the Trustee's sale.

26. On October 23, 2014, a hearing was held before the Court wherein the Debtor again expressed frustration over the entry of the Sale Order, the Trustee's sale of the Coop and the Trustee's resolution of the claim of the Esquire House.

27. Following the October 23, 2014 hearing, the Debtor contacted Grunfeld and informed him of the impending sale to Luro, the Sale Order, and the bankruptcy case.

28. On October 27, 2014, Grunfeld sent an email to the property manager for the Esquire House stating as follows:

> As the property manager for the Esquire House I need to inform you that at no time was I aware or given permission to Herman Segal or the Esquire House to have my apartment #15 at the Esquire House transferred to Mr. Herman Segal. The document of the assignment of the proprietary lease rights has been falsified (see attached) [document annexed to Complaint as <u>Exhibit B</u>]. I am prepared to take whatever legal actions against the coop, management the attorney who prepared this document without my approval or knowledge and the notary who falsely notarized my signature as well as my wife's. Unless the unit is transferred back to me immediately. [*sic*] I never received any notification from your office or the Esquire that this was taken place. The only document I ever received from management and you was the notice for a tax deed which had nothing to do with me or my apartment (see attached). At this time I would like to see all the documents your office has regarding this transfer. Your total cooperation would be greatly appreciated. Please note that Mr. Bresky, my attorney will be in touch with you. . . . .

29. On November 4, 2014, the Trustee filed an application with the Bankruptcy Court seeking to examine Grunfeld, his wife, Athena Witt, Steinherz, the notary public who acknowledged Grunfeld's signature on the lease assignment documents, and Jane Doe occupant of the Coop, which is believed at this point to be Darylann Demino [Docket No. 131].

30. On November 7, 2014, Robert Spence, Grunfeld's counsel, contacted Trustee's counsel to inform Trustee's counsel that Grunfeld intended to assert ownership of the Coop.

31. On November 21, 2014, the Trustee turned over all documents that he had related to ownership of the Coop to Grunfeld's counsel.

32. Before the Trustee could obtain any discovery, the Grunfeld filed the complaint on December 3, 2014, commencing the Coop Proceeding. The Trustee subsequently answered the Coop Proceeding and discovery ensued.

33. Since the Coop Proceeding was underway, the Trustee has done significant discovery, including scheduling and taking the following depositions:

- Steinherz;
- Demino (required two flights to Miami Beach to obtain);
- Grunfeld;
- Yocheved; and
- Teitelbaum.

34. In the meantime, while the Coop Proceeding has been going on for nearly two years, the Esquire House's claim has nearly doubled in size from approximately $30,000 to $60,000, property taxes have accrued, and Demino and others have occupied the Coop free of rent or other charges.

35. There is no question that the Coop Proceedings needs to be resolved now and the Coop sold or there will be nothing left to fight about. Further, in the context of resolving the issues with the Coop, the Trustee was able to resolve all claims by and between him and Grunfeld.

## THE STIPULATION

36. The Stipulation is a result of good faith and arms' length negotiations between the Parties seeking to resolve any and all issues related to the Coop. By way of summary, the Stipulation between the Parties provides for the following[1]:

> **Approval of Agreement**. This Agreement between the Parties is subject in all respects to the approval of the Bankruptcy Court evidenced by the entry of a written order or the "So Ordering" of this Stipulation (an "Approval Order"). The Trustee shall file a motion seeking an Approval Order by no later than ten (10) days of the signing of this

---

[1] For ease of reference, the Trustee has included a summary of the terms of the Stipulation here. Parties are encouraged to review the entire Stipulation in its entirety and not rely on the summary set forth herein. To the extent there is any express or implied conflict between the terms of the Stipulation and the description contained herein, the terms of the Stipulation shall control.

Agreement by all Parties.

- **Resolution of the Sale Order and Vacatur Motion**. Upon entry of the Approval Order, and the Approval Order becoming a final order (a "Final Order"), the Sale Order will be vacated without prejudice to the Trustee's anticipated subsequent request to sell the Coop, and the Vacatur Motion will be deemed withdrawn without prejudice and marked off the Court's calendar. The Trustee will promptly return to Francisco Luro, the contemplated purchaser under the Sale Order, any deposit or down payment given by him towards the purchase of the Coop. Mr. Luro will be free to bid on the Coop and participate in the sale of the Coop in the 363 Sale (as defined below).

- **Title and Sale of the Coop**. It is agreed, subject to the terms hereof, that the Trustee has good and lawful title to the Coop, and is able to transfer good title of same to any purchaser upon proper approval by the Coop, subject to the approval of the Bankruptcy Court. The Trustee shall, as soon as is practicable after entry into this Agreement, being marketing the Coop for sale, retain brokers and/or auctioneers necessary to market the Coop, and proceed with a sale of the Coop pursuant to section 363(b) of the Bankruptcy Code (a "363 Sale"). Trustee and Grunfeld shall agree on a broker and also agree to set an appropriate initial listing sale price and or starting price for any auction. If they cannot agree on said initial sales price or starting price for auction, they will enlist a third party broker to determine the initial listing sale price and or starting price for any auction. Any reductions in initial listing sale price, if necessary, may be made after 45 days on market and only after the parties are advised by the third party broker to lower the initial listing sales price. Trustee reserves the right to not continue with the 363 Sale in the event it will not produce a sufficient return for the Debtor's estate, in which case the Trustee will promptly abandon the Coop and assign any right, title and interest in and to the Coop, to Grunfeld. Grunfeld will cooperate and sign any documents reasonably requested by any purchaser or title insurer in order to accomplish the 363 Sale and ensure the transfer of good title.

- **Esquire House Claims.** The secured claim of the Esquire House (the "Esquire House Claim") is hereby allowed in the base amount of $60,000 and will be satisfied at the closing on the 363 Sale of the Coop (the "Closing"). If the Closing does not occur within one-hundred twenty (120) days from August 1, 2016 (the "Closing Deadline"), the Esquire House shall be entitled to additional and accruing Maintenance Charges that are incurred after July 31, 2016. Maintenance Charges shall include maintenance fees, assessments, reasonable attorneys' fees, late fees, interest and costs. The Esquire House agrees to cooperate in good faith and with all reasonable requests of the Trustee in effectuating the sale. The Esquire House will not unreasonably withhold or delay the decision to grant or withhold occupancy rights to the proposed purchaser of the Coop ("Esquire House Consent") pursuant to Article II, Section 2 of the Esquire House's bylaws (the "Esquire House Bylaws"). In the event that the only condition of Closing on a 363 Sale is the Esquire House Consent, then the Closing Deadline shall be extended hereunder until ten (10) days after the Esquire House Consent is granted.

The Esquire House shall be deemed to have received Timely, written notice of the public offering of the Coop as required by Article III, Section 2 of the Esquire House Bylaws.

To the extent that the Esquire House wishes to exercise its right of first refusal pursuant to such section, it must do so immediately at the conclusion of the Bankruptcy Court approved auction process when the highest-bid is determined.

- **Yocheved Segal**.  Yocheved Segal hereby waives any and all right or claim to the Coop, consents to any 363 Sale and the payment of the Grunfeld Sale Proceeds, and to withdraw with prejudice any claims asserted against Grunfeld or the Trustee in the Coop Proceeding.  In exchange, Grunfeld and the Trustee hereby withdraw, with prejudice, all claims asserted against Yocheved in the Coop Proceeding.

- **Steinherz Claims.**  Upon the Approval Order becoming a Final Order, the Trustee will withdraw without prejudice any claims asserted against Robert Steinherz.  Grunfeld may, at his option, continue to pursue his claims against Steinherz or withdraw or settle said claims.

- **Eviction of Demino and Occupants**.  The Trustee will proceed with the eviction of Darylann Demino and any other occupants of the Coop as previously ordered by the Court, and also with the removal of any personal property remaining in the Coop, so that the 363 Sale can proceed.[2]

- **Trustee's Fees and Expenses Associated with Sale**.  The Trustee's attorneys shall separately track their reasonable time and expenses associated with fulfilling the Trustee's obligations under this Stipulation including, but perhaps not limited to, the costs of the broker in connection with the marketing and sale of the Coop, reasonable legal fees and other costs associated with the 363 Sale, the satisfaction of any valid encumbrances on the Coop other than the Esquire House Claim, and reasonable legal fees and marshals' fees associated with the eviction of Darylann Demino and other occupants (the "Trustee Sale Costs").  For the avoidance of doubt, the Trustee Sale Costs shall not include any costs or fees associated with the pursuit, defense or settlement of the Coop Proceeding.  Within five (5) days following the closing on the 363 Sale, the Trustee shall provide an itemized list of the Trustee Sale Costs to Grunfeld and Grunfeld shall have ten (10) days to review and object (the "Trustee Sale Costs Review Period").  Any disputed amount of Trustee Sale Costs ("Disputed Trustee Sale Costs"), shall be reserved by the Trustee pending resolution of Grunfeld's objection.  To the extent that Grunfeld disputes any Trustee Sale Costs and is unsuccessful, the Trustee may add the costs of successfully defending the Trustee Sale Costs to the Trustee Sale Costs.

- **Grunfeld Payment**. Grunfeld is entitled to a payment equal to fifty (50%) percent of the net proceeds of the sale of the Coop after deduction of all closing costs, the Esquire House Claim and the Trustee Sale Costs (the "Grunfeld Sale Proceeds"), which the Trustee will pay to attorneys for Grunfeld promptly upon closing on the 363 Sale (with respect to any amount not subject to dispute), and upon resolution of any dispute regarding Disputed Trustee Sale Costs.  To the extent there are Disputed Trustee Sale Costs pending, the Trustee will reserve an appropriate portion of the Grunfeld Sale

---

[2]  The Trustee has entered into an agreement with Darylann Demino providing for the vacatur of the Coop by September 1, 2016 in exchange for the satisfaction of judgments the Trustee holds against her.  That hearing on that settlement will be heard contemporaneously with the instant Motion.

> **Dismissal of Claims Between the Parties in the Coop Proceeding**. Upon the Approval Order becoming a Final Order, the Parties will execute a stipulation of dismissal with prejudice of all claims and counterclaims asserted against each other in the Coop Proceeding, with prejudice, all of which will be deemed resolved subject to the terms of this Agreement.

> **Trustee Complaint and the Grunfeld Claim**. Upon the Approval Order becoming a Final Order, the Trustee and Grunfeld will execute a stipulation of dismissal of the Trustee Complaint and related adversary proceeding, and the Claim will be allowed as a general, unsecured claim against the Debtor's estate in the amount of $250,000 for distribution purposes only. Since the Claim is not discharged by the Debtor's bankruptcy case, Grunfeld may pursue the entire balance of the Claim ($370,150) against any non-estate or abandoned assets. Grunfeld shall not file any other claims against the estate or seek to amend the Claim, and Trustee shall not object further to the Claim.

> **Release of Claims**. Upon the Approval Order becoming a Final Order and timely payment of the Esquire House Claim and Grunfeld Sale Proceeds, the Trustee on behalf of himself and the Debtor's estate, the Esquire House and Grunfeld, hereby waive and release any and all claims, causes of action, rights and remedies each has or had, known or unknown against the other except for the Grunfeld Claim.

## RELIEF REQUESTED

37. By this Motion, the Trustee seeks this Court's approval of the Stipulation, and asserts that the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Stipulation is in the best interest of the estate and its creditors.

38. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere

11

Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

39.     In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

40.     To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co)., 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

41.     The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

42.     The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the

best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

43. Here, numerous factors were considered by the Trustee in determining that entry into the Stipulation was in the best interests of the estate.

44. First, the Trustee analyzed the circumstances of the various claims made by Grunfeld. The Trustee presumed, but does not admit, that Grunfeld's signatures were not his own. However, the Trustee does contend that regardless, Grunfeld had acquiesced to the Debtor's affixing his signatures to the relevant transfer documents, or that he had otherwise waived any right to challenge the transfer to the Debtor. The Trustee's asserted defenses are difficult and subject to significant risk. The Trustee believes that the fifty-fifty split of the net proceeds between him and Grunfeld represents a fair probability of success on the merits. Further, the Trustee considered the likelihood of success on the various other resolutions embodied in the Stipulation:

- The Trustee had no issue releasing the notary fraud claims against Yocheved and Steinherz because it appears that Yocheved's signature was forged on the relevant document and it is Grunfeld, not the Trustee, that has the better claims against Steinherz;

- The Trustee reviewed the Esquire House claim and believes that the $60,000 represents the actual amount owed with a slight discount; and

- The Trustee reviewed Grunfeld's Claim and his claims against Grunfeld in the Trustee Complaint and believes that Grunfeld has defenses to the Trustee's claims and that any judgment rendered against Grunfeld is largely uncollectable.

45. Second, the Trustee considered the expenses associated with litigation. The

Trustee is cognizant that every dollar incurred by the Trustee in prosecuting the Transfers will reduce the pool of money available to the Debtor's creditors. Indeed, the Trustee has already conservatively incurred expenses well in excess of the value of the Coop after the deduction of senior liens. The Trustee needs to resolve these matters immediately without further delay or cost. It is in the best interests of creditors and the estate to resolve all the issues related to the Coop and Transfers as quickly and expeditiously as possible. The Stipulation accomplishes that.

46.  For all the foregoing reasons, the Trustee believes that the Stipulation is fair, reasonable and in the best interests of the estate and creditors. Accordingly, the Trustee respectfully requests that this Court approve the Stipulation.

## NOTICE

47.  Notice of this Motion will be given in accordance with Bankruptcy Rule 2002. The Trustee submits that such notice constitutes good and sufficient notice and that no other or further notice need be given.

## NO PRIOR REQUEST

48.  No previous application for the relief requested herein has been made to this or any other court.

*[Continued on next page]*

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as <u>Exhibit B</u>, and for such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
August 12, 2016

                **KLESTADT WINTERS JURELLER**
                  **SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com

*Special Litigation Counsel to Richard E.
O'Connell, Chapter 7 Trustee*